**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

MIGUEL ROMERO,

                        Plaintiff,

     v.
                                            No. 1:19-CV-1477

IRVING TISSUE COMPANY                     (FJS/CFH)
LIMITED, et al.,


                        Defendants.
_____

**APPEARANCES:**

Hofmann & Schweitzer                       DARIO ANTHONY CHINIGO, ESQ.
212 West 35th Street, 12th Floor
New York, New York 10001
Attorney for Plaintiff

Smith, Sovik, Kendrick & Sugnet, P.C.     KAREN G. FELTER, ESQ.
250 South Clinton Street, Suite 600       MARLA E. RAUS, ESQ.
Syracuse, NY 13202-1252                    VICTOR L. PRIAL, ESQ.
Attorneys for defendants

## MEMORANDUM, DECISION & ORDER

Presently pending before the Court is plaintiff Miguel Romero's ("plaintiff") motion to compel defendant Irving Consumer Products, Inc. ("ICPI") to produce certain documents and a witness for deposition, or, in the alternative, file a Third Amended Complaint ("TAC"). See Dkt. No. 57. ICPI opposes plaintiff's motion. See Dkt. No. 58. For the reasons that follow, plaintiff's motion to compel is granted in part and denied in part, and plaintiff's motion to amend is denied.

## I. Background

**A. Plaintiff's Second Amended Complaint**[1]

Plaintiff, a self-employed 18-wheeler truck driver and resident of Texas, brings this diversity jurisdiction action seeking damages in excess of $75,000 for personal injuries he allegedly suffered when chattel fell from his trailer after transport from New York to Washington State. See Dkt. No. 7 ("SAC") at 1 ¶ 1, 2 ¶ 8, 4-5 ¶ 4, 7 ¶ 34. Plaintiff formed and works as a driver for his company, MCR Express. See Dkt. No. 57-2 (P's EBT) at 56. ICPI is a New York corporation, which produces tissue products. See SAC at 1 ¶ 3, 2 ¶ 9. Defendant Distribution Unlimited, Inc. ("Distribution") is a New York corporation that provides warehousing and distribution services for ICPI's goods before shipment to ICPI customers. See id. at 2-3 ¶¶ 6, 11; Dkt. No. 57-5 at 31.

On or about March 23, 2018, plaintiff d/b/a MCR Express, entered into a contract with nonparty trucking broker C.H. Robinson to provide carrier services. See SAC at 3 ¶ 12; Dkt. No. 57-2 at 65-69, 71-72. On or about May 14, 2018, pursuant to his contract with nonparty C.H. Robinson, plaintiff arrived at Distribution's warehouse in Rotterdam, New York, to pick up a load of chattel (cases of diapers), to transport to two distribution centers for Kroger supermarkets located in Washington State and Oregon. See SAC at 3 ¶ 12; Dkt. No. 58-11 at 2. Upon arriving at Distribution's warehouse, plaintiff backed his trailer up to Distribution's loading bay, and forklift operators employed by Distribution loaded pallets of chattel onto plaintiff's 18-wheeler. See SAC at 3 ¶ 16, 4 ¶ 20; Dkt. No. 58-16 at 4 (citing Dkt. No. 58-11 at 2). Plaintiff did not physically help load, direct, supervise, or observe Distribution employees load the

---

[1] Insofar as the factual assertions contained in plaintiff's Second Amended Complaint are supplemented by the documentary evidence, including plaintiff's deposition testimony, those facts are also included.

pallets onto the trailer, as he remained in the cab of his truck during the duration of the loading process.  See SAC at 3 ¶¶ 17, 18; Dkt. No. 57-2 at 89, 90.  After loading a full load onto plaintiff's trailer, the Distribution forklift operators closed the doors of the trailer, and plaintiff pulled forward from the loading bay.  See Dkt. No. 57-2 at 90.  Plaintiff "didn't do any inspections."  Id.

Plaintiff alleges that, on or about May 19, 2018, upon reaching his first delivery point in Puyallup, Washington, he opened the doors to the trailer and "a pallet, or more than one pallet, or goods . . . fell out of the truck, violently striking [his] body . . ., and severely and permanently injuring him."  SAC at 5 ¶ 24.  Plaintiff alleges that "defendants . . . negligently, carelessly, recklessly and improperly loaded [the pallets of chattel] onto [plaintiff's] truck."  Id. at ¶ 25.  Further, plaintiff avers that defendants "fail[ed] to properly, adequately and safely secure the pallets in the back of the truck; in permitting and allowing the pallets of chattel . . . to remain unsecure, loose, thereby posing a danger to anyone who opened the swing door in the back of the truck[.]"  Id.  Plaintiff contends that defendants, "negligently fail[ed] to utilize available restraints to secure the load in the back of the truck[.]"  Id. at 6 ¶ 25.  Plaintiff alleges that defendants failed "to make sure that their employees had adequate knowledge, information, instruction, training and supervision, so as to avoid the happening of an accident/occurrence as is claimed" in plaintiff's SAC.  Id. at 6 ¶ 27.

Plaintiff also alleges that defendants were negligent/grossly negligent, careless and/or reckless in "failing to inspect the restraint system for the load . . . ; failing to ensure that the load was stabilized . . .; failing to account of the weight of the goods . . .; failing to account of the dimensions of the goods that were loaded . . .; failing to tie

3

down the goods or to use a direct restraint method if tying down the goods was not possible; . . . failing to ensure that the pallets were not able to shift . . . ." SAC at 7 ¶ 28. Similarly, plaintiff alleges that defendants were negligent/grossly negligent, careless and/or reckless "in failing to apply chain lashings and/or webbing with appropriate lashing capacity to restrain the load or contain the load . . . ." Id. at 7 ¶ 29. Moreover, of particular relevance to plaintiff's present motions, plaintiff alleges that defendants were negligent/grossly negligent, careless and/or reckless by "failing to unitize the loads or in negligently, carelessly and recklessly unitizing the load that was loaded upon" plaintiff's truck. Id. (emphasis added).

## II. Plaintiff's Present Motions

### A. Motion to Compel

Plaintiff moves to compel ICPI, pursuant to its December 7, 2020 Notice to Produce, to produce for deposition

> The individual responsible for the purchasing of materials used to package pallets of goods produced by ICPI for transport from ICPI's factory or facility to Distribution . . . facility; and responsible for overseeing the packaging, wrapping and overall preparation of pallets for transport to Distribution's . . . Rotterdam facility.

Dkt. No. 57-12 at 11 (quoting Dkt. No. 57-8 at 1-2). The purported subject matter of the deposition plaintiff requested consisted of details regarding the purchasing, testing, policies and procedures, storage, material of the "stretch-wrap and/or any other items used to package the goods being brought from ICPI's facilities, to Distribution [sic] facility in Rotterdam NY, for ultimate transfer to carrier's trailers for shipping to retailers and wholesalers." Id. at 1 ¶ 1. Plaintiff also sought to depose the witnesses concerning

4

"[a]ny agreements between . . . Distribution . . . and ICPI with respect to the packaging and/or transport and or storage of goods, cargo or other chattel"; "ICPI's safety procedures, guidelines or requirements relating to the loading and unloading of transport trucks and vehicles, box trucks, tractor-trailers, etc."; "[t]he procedures to be followed by Distribution . . . pursuant to Distribution's agreement with ICPI during the loading of pallets onto individual carrier's trailers, to ensure safety during transport and upon docking and during unloading of chattel"; and "ICPI's requirements for movement or transport of goods at the Rotterdam facility, including but not limited to requirements relating to the securing of cargo, stabilization of cargo, repair of broken packaging/wrap."  Id. at ¶¶ 4, 6, 8, 9.  Plaintiff also sent ICPI Notice to Produce documents relating to the aforementioned items.  See Dkt. No. 57-7 at 2-4 ¶¶ 1-21.

On December 9, 2020, defense counsel acknowledged receipt of plaintiff's "Notice of Deposition," which it "reject[ed] . . . pursuant to FRCP 26(b)(1), on the basis that the information sought has no relation or relevance to any claim or defense of this action."  Dkt. No. 57-9 at 1.  Defense counsel provided the following reasoning in support of rejecting plaintiff's demands,

> The pleadings and allegations contained within [p]laintiff's discovery responses are devoid of any mention of the packaging of the subject pallets.  Plaintiff's allegations of negligence, as set forth in the Complaint and [p]laintiff's Response to [ICPI's] Demand for Interrogatories, solely relate to the loading and alleged failure to secure the subject load with various devices.  The packaging of the pallets is not at issue in this case.  Therefore, the information sought in the Notice of Deposition to [ICPI] has no bearing on the claims or defenses in this case.

Id.

Plaintiff argues that discovery pertaining to the plastic wrap ICPI uses to package pallets is relevant to his claims and proportional to the needs of the case.  See Dkt. No. 57-12 at 13.  First, plaintiff contends that the use of the term "unitize," as contained in the SAC, is "an industry term meaning the efficient means of packaging, arranging and transporting products into an appropriate unit for easy handling by material handling equipment."  Id. at 8.  Plaintiff cites an online dictionary for the proposition that "a unitized load is defined as '[a] single item or number of items packaged, packed, or arranged in a specified manner and being capable of being handled as a unit. Unitization may be accomplished by placing the item or items in a container or by banding them securely together.'"  Id. at 8 (quoting https://www.thefreedictionary.com/unitized+load) (parentheses omitted).

Pointing to paragraph 29 of the SAC, which alleges that defendants were negligent/grossly negligent, careless and/or reckless by "failing to unitize the loads or in negligently, carelessly and recklessly unitizing the load that was loaded upon" plaintiff's truck, SAC at 7 ¶ 29, plaintiff avers that, contrary to defendants' position, the demands contained in his December 7, 2020 notices are relevant to his claims.  See Dkt. No. 57-12 at 17.  In particular, based on paragraph 29 of the SAC, plaintiff posits that the SAC alleged a separate basis for ICPI's negligence insofar as he asserted that not only were the pallets improperly loaded onto his truck, but also that the pallets themselves were "improperly packaged[.]"  Id.  Plaintiff states that his allegations in this regard "relate to the manner in which the load was bound before it was placed on the truck."  Id. at 18. Plaintiff avers that, it was not "confirmed" that the pallets Distribution loaded onto his truck at Distribution's Rotterdam, New York, warehouse "had been unitized by the

6

manufacturer of the goods," ICPI, until the December 20, 2020 deposition of Stephen Pac, one of the Distribution forklift operators on duty at the time his truck was loaded on May 14, 2018.  Id. at 9 (citing Dkt. No. 57-6 at 12-13).[2]  Thus, plaintiff argues, he pleaded his claims concerning unitization in his SAC in "general [terms], as is allowable," such pleadings were "specific enough to support his claims and to support the discovery demands that [he] served on December 7, 2020."  Id. at 18.

Plaintiff further avers that the discovery he now seeks to compel, as requested in his December 7, 2020 demands, is proportional.  See Dkt. No. 57-12 at 18.  In particular, plaintiff argues that the information sought is necessary for "to prove negligence in unitizing the load," as it directly relates to "whether the defendants acted reasonably not only in the means and methods employed in loading the tractor-trailer, but whether defendants acted reasonably in unitizing and stabilizing the loads before they were loaded."  Id. at 19.  Plaintiff also contends that the information sought is in the exclusive control of ICPI, a "multi-million[-]dollar corporation" with much greater resources than plaintiff, who has limited means.  Id.  Moreover, plaintiff avers that the burden on defendant is "negligible at best," and that his injuries and his "pecuniary losses and damages related to his pain and suffering" are "extensive."  Id. at 20.

In addition, plaintiff characterizes ICPI's objection to his December 20, 2020 discovery demands as "boilerplate" and "improper."  Dkt. No. 57-12 at 20.  Concerning his Notice of Deposition, plaintiff avers that ICPI's "refusal was solely premised on 'relevance' which as shown above is an incorrect premise and objection."  Id.  Plaintiff also posits "defendants should be deemed to have waived their objections" to his Notice

---

[2] The undersigned notes that plaintiff's counsel neglected to cite to a specific page number(s) in support of this assertion.

to Produce, because ICPI "simply ignored" to his "Notice to Produce," "failed to produce the evidence requested and never moved for a protective order pursuant to [Fed. R. Civ. P.] 26(c)(1)." Id. at 20, 21.

### B. Motion to Amend

As an alternative to his motion to compel, plaintiff asks the Court to allow him to file his proposed Third Amended Complaint ("proposed TAC") to clarify his allegations of negligence premised on ICPI's purported failure to properly unitize the pallets loaded onto his truck at Distribution's Rotterdam warehouse on May 14, 2018.  See Dkt. No. 57-12 at 21.  Plaintiff posits that allowing amendment will not cause undue delay, as the discovery deadline in this action has not yet expired; any delay in seeking to amend is occasioned by ICPI's "improper refusal to produce discovery"; and that the "depositions of the defendants as noticed were not even complete as of the time the discovery dispute arose in early December 2020."  Id. at 21, 22.  Further, plaintiff argues that defendants will not be prejudiced by allowing amendment and further discovery.  See id. at 22.  Plaintiff states that the TAC will not add new claims, but only clarify the arguments defendants contend are vague.  See id.  Plaintiff also asserts that, because the statute of limitations has not yet expired, allowing amendment would promote judicial economy by avoiding the need to bring a separate action for negligent unitization and "then move to consolidate the two cases."  Id. at 23.  Finally, plaintiff asks that the Court extend the discovery deadlines in this matter, "[e]ven if both motions are denied, [as his] expert will need some additional time to prepare his report, so that

proper disclosure can be made[] in accordance with the Federal Rules of Civil Procedure." Id. at 24.

### C. Defendants' Opposition

Defendants contend that plaintiff's motion to compel should be denied because the information and deposition concerning ICPI's pallet wrapping is irrelevant to the claims asserted in the SAC. See Dkt. No. 58-16 at 8. Rather, defendants aver, "[p]laintiff . . . unambiguously claimed from the initiation of this action that the alleged negligence by [d]efendants related solely to improper loading of . . . [p]laintiff's truck on May 14, 2018, . . . at Distribution's Rotterdam facility." Id. (emphasis omitted). Further, defendants contend that all "evidence adduced during discovery has unequivocally shown that ICPI was not involved with the loading of [p]laintiff's truck . . . ." Id. Therefore, defendants assert, "[p]laintiff is attempting through verbal gymnastics," to keep ICPI, a large corporation, in the lawsuit by "contorting his own claims to fit a newfound narrative" that ICPI was negligent in wrapping or packaging the pallets that allegedly fell on and caused injury to plaintiff." Id. at 9.

In particular, defendants argue that, the allegations in the SAC, read in context, when considered with plaintiff's deposition testimony, establishes that plaintiff's claims are premised exclusively on the alleged loading of his trailer, and not on the wrapping or packing used to secure the pallets. See Dkt. No. 58-16 at 9. Defendants point out that ICPI evidence adduced in discovery establishes that pallets of ICPI's products are "pre-wrapped" in "stretch-wrap" or "pallet wrap" plastic before they are brought to Distribution's warehouse. Id. at 4. Defendants contend that, "when reading [plaintiff's]

9

reference of 'unitize' in his [SAC], along with the date reference of May 14, 2018," as contained in paragraph 29 of the SAC, "it is clear that [p]laintiff was referring to the 'unitization' of the pallets into the truck on the date in question, and not the wrapping of the pallets at some unspecified date in the past."  Id. at 9 (quoting SAC at 7 ¶ 29).  Therefore, defendants posit that plaintiff's reference to ICPI's and Distribution's actions "'at the afore-described place, time and location' as being 'the direct and proximate cause of his alleged injuries," refers only to the actions on May 14, 2018 at Distribution's Rotterdam warehouse, not any prior date or actions relating to ICPI's wrapping or packing of the pallets at another location.  Id. (quoting SAC at 8 ¶ 30).

      Moreover, defendants contend that plaintiff's deposition testimony related solely to alleged improper loading and/or securing of the load as a whole, and was devoid of any reference to individual pallets.  See Dkt. No. 58-16 at 10 (citing Dkt. No. 57-2 at 122-26).  Defendants also note that Distribution employee Harold Fischer, one of the forklift operators on duty on May 14, 2018, testified at deposition that damaged or leaning pallets would have either been repaired or not loaded onto the truck, and that for plaintiff's load, Stephen Pac, the other forklift operator on duty on May 14, 2018, "certified that the load was 'checked,' which meant that the pallets were inspected and that there were no defects with the pallets, their wrapping, or their goods."  Id. (citing Dkt. No. 57-3 at 58).  Thus, defendants argue, plaintiff's arguments concerning improper wrapping and packaging rely on "pure speculation" and the evidence requested in relation thereto is irrelevant to the claims and defenses asserted in connection with the SAC.  Id. at 10 (emphasis omitted).

Next, defendants argue that plaintiff's motion to amend should be denied because allowing amendment of the SAC to include claims concerning improper wrapping or packing of pallets would be futile.  See Dkt. No. 58-16 at 11.  Defendants state that "discovery is close to completion" in this matter, and reiterate that "no document or testimony . . ., including . . . [p]laintiff, shows or even suggests that there was anything wrong with the manner in which the pallets were packed or wrapped *before* they arrived at Distribution."  Id. at 13 (additional emphasis omitted).  Defendants aver that plaintiff "has no factual basis to contend [that] there was something wrong with the manner in which the pallets were packed and wrapped by ICPI[,]" which, in any event, is "debunked by the existing record."  Id. at 13, 14.

### III. Discussion

### A. Plaintiff's Motion to Compel

Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  FED. R. CIV. P. 26(b)(1).  Rule 26 tasks the Court to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Id.  "A district court has broad latitude to determine the scope of discovery and to manage the discovery process."  EM Ltd. v. Republic of Argentina, 695 F.3d 201, 207 (2d Cir. 2012) (citing In re Agent Orange Prod. Liab. Litig., 517 F.3d 76, 103 (2d Cir. 2008)).

Based upon a review of the parties' arguments and relevant material in the record, the undersigned concludes that plaintiff is not entitled to compel discovery pursuant to the December 7, 2020 Notice to Produce or Notice of Deposition based on plaintiff's failure to establish the relevance of the information requested.  The Court finds unpersuasive plaintiff's argument that the two references to "unitize" and "unitizing" contained in paragraph 29 of the SAC related to the plastic or pallet wrapping performed by ICPI <u>before</u> delivery of goods to Distribution's Rotterdam warehouse and/or <u>before</u> plaintiff's trailer was loaded on May 14, 2018.  SAC at 7 ¶ 29.  As defendants aver, a reading of plaintiff's allegations in context, specifically those contained in paragraph 29—the only paragraph in which plaintiff uses the terms "unitize" and "unitizing"—makes clear that plaintiff did not allege a claim or claims in the SAC upon a theory that ICPI negligently wrapped or packaged pallets prior to their delivery to Distribution's Rotterdam warehouse or, for that matter, any claims relating to any conduct or actions that occurred prior to Distribution employees loading plaintiff's trailer on May 14, 2018.  <u>Id.</u>; <u>see</u> Dkt. No. 58-16 at 8, 9.  Rather, plaintiff's claims, as pleaded in the SAC, related solely to the loading of the pallets on plaintiff's trailer on May 14, 2018.  The plain language of plaintiff's allegations, specifically plaintiff's use of the plural "loads" in his contention that defendants failed "to unitize the <u>loads</u>" and the use of the collective noun "load" in his allegation that defendants acted "negligently, carelessly and recklessly" in "unitizing the load that was loaded upon" plaintiff's trailer make clear that plaintiff intended to refer to the collective load of pallets that Distribution employees loaded onto his truck on May 14, 2018.  <u>Id.</u> (emphasis added).  Indeed, read in context, plaintiff's allegations in paragraph 29 of the SAC, that defendants acted negligently in "overlading

the truck"; "failing to properly tie down the load"; failing to apply chain lashings and/or webbing with appropriate lashing capacity to restrain the load or contain the load with a suitably rated containment body" evidence that plaintiff's references to the "load" were directed at the cumulative load of pallets—not the wrapping of the individual pallets.  Id. Insofar as plaintiff used the plural form of the noun "loads," the context makes clear that plaintiff made reference to the alleged act of negligently securing the various pallets together so that the cumulative load would not move, shift, or otherwise allow for any pallet or pallets to come loose during plaintiff's cross-country trip, but simply cannot be fairly read to refer to the use of wrapping or packing of those pallets.  Thus, to the extent plaintiff used the words "unitize" and "unitizing" it was in reference to the unitization of the collective load of pallets that was loaded onto his trailer—not the individual pallets themselves.  Moreover, as defendants point out, plaintiff's reference to "[t]he actions and/or omission of defendants . . . at the afore-described place, time and location were the direct and proximate cause of the . . . injuries sustained by [plaintiff] as the result of the accident" necessarily refers to the May 14, 2018 date when Distribution employees loaded his truck at Distribution's Rotterdam warehouse—not some prior date when the pallets were wrapped before arriving at a different location—as plaintiff does not reference any other date, time, or place in the SAC.  Dkt. No. 58-16 at 8 (quoting SAC at 27 ¶ 30).  To read these allegations otherwise would strain logic and the English language.

     Further, the Court finds compelling defendants' argument that the record evidence, including plaintiff's deposition testimony, makes clear that plaintiff's allegations in the SAC referred only to the alleged failure of Distribution employees to

13

properly secure the collective load of pallets which they loaded on plaintiff's trailer on May 14, 2018.  See Dkt. No. 58-16 at 8, 9.  At deposition, defense counsel asked plaintiff, "In what way was [the trailer] was inappropriately loaded?"  Dkt. No. 57-2 at 124.  Plaintiff replied that he "believe[d] . . . they did it wrong because they didn't put the pallets all together, and they put it in a way there was some certain distance and that's why there was some movement."  Id.  Plaintiff continued that, "it's that they didn't secure the load properly and they put the pallets far away.  They didn't put it together, separated[,]" and that "they didn't make sure that the pallets were in the right place."  Id. at 125-26.  Thus, as plaintiff's testimony further corroborates, the only theory of negligence contemplated and/or advanced in the SAC was premised on Distribution employees' alleged failure to properly place and secure the pallets as a collective load onto plaintiff's trailer, which purportedly caused a pallet or pallets to move and/or come loose and fall out of the truck and injure plaintiff after his cross-country drive.

In addition, as defendants point out, evidence has already been adduced through discovery establishing that ICPI provides Distribution's Rotterdam warehouse facility with pre-wrapped pallets; the steps that Distribution warehouse personnel take to review, identify, and remedy any damaged wrapping on pallets, including to repair and/or remove leaning or unsecure pallets.  See Dkt. No. 58-16 at 10 (citing Dkt. No. 57-3 at 58; Dkt. No. 58-12 at 2).  Therefore, the Court concludes that the evidence already obtained in discovery is sufficient to address plaintiff's claims as pleaded in the SAC.   To the extent plaintiff seeks further detailed information concerning the materials, procedures, and/or processes used to wrap the pallets, he seeks information that is not relevant to the claims in this action.

14

As an additional matter, the Court finds plaintiff's arguments concerning defendants' response and objection to the December 7, 2020 notices to be erroneous at best and bordering on disingenuous.  See Dkt. No. 57-12 at 20.  First, contrary to plaintiff's unsupported assertions, defendants did not make a "boilerplate" or "improper" objection that was bereft of specificity.  Id.  Rather, defendants proffered the same reasoning as advanced in their opposition to plaintiff's motion to compel, albeit in a more abbreviated fashion.  See Dkt. No. 57-9 at 1.  Namely, as included in whole above, defendants argued that the subject matter of the information sought concerning pallet wrapping was irrelevant because it did not relate to the claims in plaintiff's SAC.  See id.  Regardless of the fact that plaintiff has declined to cite defendants' objection in whole, their response was not procedurally deficient.  Further, to the extent plaintiff argues that defendants' objection to the December 7, 2020 Notice to Produce should be considered waived for defendants' purported failure to respond, plaintiff is again mistaken.  See Dkt. No. 57-12 at 20.  As stated, the subject matter of the information sought in both notices—which defendants objected to—was the same.  See Dkt. No. 57-7; Dkt. No. 57-8.  Plaintiff's focus on fact that defendants did not specifically cite the Notice to Produce in their objection seeks to place form over substance is of no moment.  Based on the foregoing, plaintiff's motion to compel is denied insofar as it seeks information and/or to depose a witness relating to the wrapping of pallets by ICPI.

However, insofar as plaintiff's December 7, 2020 notices seek information relating to the loading and/or securing of pallets for transport by Distribution, as defendants do not controvert, such information is relevant.  Accordingly, plaintiff's motion to compel is granted insofar as it seeks to compel discovery of the following

15

items as listed in plaintiff's December 20, 2020 Notice to Produce, except as otherwise limited by the Court: 6, except insofar as plaintiff seeks "documents showing or detailing . . . repair of broken packaging/wrap," as such information is not relevant to plaintiff's claims; 8, except insofar as plaintiff seeks documents detailing the unloading of chattel by Distribution as those documents are not relevant to plaintiff's claims, which involve only the loading of chattel; 9; 12; 14, except insofar as plaintiff seeks documents concerning unloading procedures at Distribution's Rotterdam warehouse, as such documents are not relevant to plaintiff's claims; 18; and 19.  See Dkt. No. 57-7 at 2-3.

### B. Plaintiff's Motion to Amend

The Federal Rules of Civil Procedure ("Fed. R. Civ. P.") provide that courts "should freely give leave" to amend a pleading "when justice so requires."  FED. R. CIV. P. 15(a)(2).  However, motions to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."  Burch v. Pioneer Credit Recovery, Inc., 551 F.3d 122, 126 (2d Cir. 2008); Foman v. Davis, 371 U.S. 178 (1962).

> In determining what constitutes "prejudice", [the Court is to] consider whether assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.

Block v. First Blood Assoc., 988 F.2d 344, 350 (2d Cir. 1993) (citations omitted).  If the amendment proposed by the moving party is futile, "it is not an abuse of discretion to

16

deny leave to amend." Eldridge v. Rochester City Sch. Dist., 968 F. Supp. 2d 546, 553 (W.D.N.Y. 2013) (citing Ruffolo v. Oppenheimer & Co., 987 F.2d 129,131 (2d Cir. 1993)).  The determination whether a proposed amendment is futile is made under the same standard as that used to determine whether a claim would be subject to a motion to dismiss pursuant to Rule 12(b)(6)—"namely, the court must determine whether the allegations in the complaint state a claim upon which relief can be granted." Id.  To avoid dismissal, the proposed amended claims must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  If the underlying facts or circumstances relied on by the party seeking leave to amend may be a proper subject of relief, the party should be afforded the opportunity to test the claim on its merits.  See U.S. ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago, 889 F.2d 1248, 1254 (2d Cir. 1989).

The Court agrees that plaintiff's motion to amend should be dismissed as futile.  Upon careful consideration of plaintiff's arguments and the record before the Court, there is simply no basis upon which plaintiff may assert that the plastic wrapping on one or more of the individual pallets loaded onto his truck on May 14, 2018, was defective and/or was a proximate cause of plaintiff's injury.  As discussed in detail above, the evidence of record—including plaintiff's deposition testimony—cuts against the newly proposed "unitization" claim, as the pleadings and evidence characterize defendants' alleged negligence only in terms of failing to properly secure the full load of pallets onto plaintiff's trailer.  Indeed, the evidence already adduced indicates that the pallets loaded onto plaintiff's truck on May 14, 2018, were inspected and signed off on as being

17

undamaged by Distribution's forklift operator Pac, and that damaged pallets are removed and/or repaired upon inspection by Distribution employees. Plaintiff's newly advanced theory based on improper/negligent wrapping and/or packaging of individual pallets is wholly speculative.

Plaintiff's alternative argument, that he will simply file a new lawsuit asserting only his unitization claim which he will then join with this action, is also mistaken. While plaintiff references the statute of limitations relating to his personal injury action as having not yet expired, any future action for personal injuries brought under his theory of negligent unitization would, in fact, be untimely as it is now August 2021—approximately three months beyond the three-year statute of limitations for asserting a personal injury claim based on alleged the May 14, 2018 accident. Kidney v. Webster, No. 3:16-CV-0831 (LEK/DEP), 2017 WL 758508, at *8 (N.D.N.Y. Feb. 27, 2017) ("Under New York law, the statute of limitations for a personal injury action is three years from the date of injury.") (citing N.Y. C.P.L.R. 214(5) (additional citation omitted). Based on the foregoing, plaintiff's motion to amend is denied on the basis that allowing amendment to assert the proposed negligent unitization claims would be futile.

## IV. Conclusion

**WHEREFORE**, for the reasons stated above, it is hereby:

**ORDERED**, that plaintiff's motion to compel (Dkt. No. 57) is **GRANTED IN PART AND DENIED IN PART**; and it is further

**ORDERED**, that defendants produce documents relating to the following items, as modified by this Memorandum, Decision & Order and only insofar as is not duplicative of documents previously disclosed by defendants:

a) All documents showing or detailing ICPI's requirements for movement or transport of goods at the Rotterdam facility, including but not limited to requirements relating to the securing of cargo, stabilization of cargo;

b) Any document detailing the procedures to be followed by Distribution Unlimited pursuant to Distribution's agreement with ICPI during the loading of pallets onto individual carrier's trailers, to ensure safety during transport;

c) Copies of any contracts between ICPI and Distribution Unlimited, in effect in May 2018, relating to the transport of ICPI's goods, cargo and/or chattel;

d) Any documents relating to the loading of ICPI's goods at Distribution's Rotterdam facility in effect in May 2018, including those detailing loading safety;

e) All documents detailing any performance testing done in accordance with industry standards to ensure that the methods and procedures described in ASTM D 4169 - Standard Practice for Performance Testing of Shipping Containers and Systems – were met;

f) All documents showing the testing performed in accordance with the standards described by the International Safe Transit Association (ISTA) for palletized loads prepared, including but not limited to ISTA Procedure

3E, for shipping of pallets such as those loaded onto plaintiff's trailer on May 14, 2018; and it is further

**ORDERED**, that plaintiff's motion to compel (Dkt. No. 57) is otherwise **DENIED**; and it is further

**ORDERED**, that plaintiff's motion to amend (Dkt. No. 57) is **DENIED IN ITS ENTIRETY**; and it is further

**ORDERED**, that the discovery and dispositive motion filing deadlines will be reset in a separate order at a future date; and it is further

**ORDERED**, that the Clerk of the Court serve copies of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: August 16, 2021
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge